OPINION OF THE COURT
Kaye, J.
Can an unusable cocaine "residue” found on the sides of vials in defendant’s possession support a charge of criminal possession of a controlled substance in the seventh degree? Concluding that it can, we reverse Appellate Term’s dismissal order and grant the People’s request to reinstate the misdemeanor complaint.
Defendant, allegedly using a metal pipe to damage the door lock of a Staten Island apartment, was arrested for criminal mischief in the fourth degree. In the course of the arrest, two vials were recovered from his possession. The police department laboratory analyzed their contents and reported cocaine "residue” on the sides of the vials. Defendant was arraigned on a misdemeanor complaint charging him with criminal possession of a controlled substance in the seventh degree (Penal Law § 220.03). The complaint, sworn by a police officer, stated that defendant knowingly and unlawfully possessed two vials containing a controlled substance, that the officer had received police department training in the recognition of controlled substances, that he viewed the substance, and that in his opinion it "is crack, cocaine.”
Following receipt of a certified copy of the laboratory report, the People moved in open court to convert the misdemeanor complaint to an information. Defendant responded to the People’s motion with an oral application to dismiss the complaint on the ground that residue, being an immeasurable amount, is insufficient to sustain a charge of seventh degree possession of a controlled substance. The People objected, insisting that since cocaine was in fact present, they had established a prima facie case. Criminal Court dismissed the accusatory instrument,* concluding that cocaine residue was not a controlled substance as defined in the Public Health Law, and Appellate Term affirmed.
*654 While the cocaine "residue” at issue here was not quantified, it is undisputed that the amount was so small as to be unusable. Thus, the question presented by this appeal is whether a charge of criminal possession is sustainable under Penal Law § 220.03 when the quantity of the drug possessed is an unusable residue. Differing results have been reached on this narrow issue (compare, e.g., People v Rencher, 141 AD2d 676, lv denied 72 NY2d 961 [construing Penal Law § 220.39 (1)]; People v Smith, 138 Misc 2d 531; People v James, 138 Misc 2d 920, with People v Ifill, 137 Misc 2d 14; People v Shelton, 136 Misc 2d 644; People v Mason, 136 Misc 2d 968).
The People urge us to adopt «the view of a majority of jurisdictions that any amount of a proscribed substance is sufficient to sustain a conviction for possession (see, Note, Criminal Liability for Possession of Nonusable Amounts of Controlled Substances, 77 Colum L Rev 596, 605-612 [1977]). Defendant, not surprisingly, advocates the minority view— that possession of a mere trace of cocaine cannot constitute a crime (id., at 600-604). Defendant contends that the Legislature meant to punish only possession of usable drugs, and that possession of minute amounts does not threaten the societal interests protected by the crime of unlawful possession.
Because of the language and structure of the New York statute, its relevant history and compelling practical considerations, we conclude that cocaine residue — though unusable — is nonetheless a controlled substance (Public Health Law § 3306) that can give rise to criminal liability for what the Legislature has classified as possession of a controlled substance in the seventh degree.
The prohibition against criminal possession of controlled substances is part of Penal Law article 220 (Controlled Substances Offenses), enacted in a comprehensive amendment of the drug laws in 1973. The "possession” crimes are set forth there in seven degrees, ranging from a class A misdemeanor for seventh degree possession to a class A-I felony for possession in the first degree (see, Penal Law §§ 220.03-220.21; see also, Hechtman, Practice Commentaries, McKinney’s Cons Laws of NY, Book 39, Penal Law art 220, at 6-10). While the Penal Law sections defining the six higher degrees of criminal possession specify other factors, such as minimal amounts or particular substances, Penal Law § 220.03 simply reads: "A person is guilty of criminal possession of a controlled substance in the seventh degree when he knowingly and unlawfully possesses a controlled substance.”
*655 Penal Law § 220.03, viewed by itself, is unambiguous: a person may be guilty of criminal possession of a controlled substance in the seventh degree when he or she knowingly and unlawfully possesses a controlled substance, irrespective of amount. When Penal Law § 220.03 is viewed in its statutory setting (see, Penal Law §§ 220.03-220.21), the absence of any qualification is particularly telling. The array of possession crimes demonstrates that when the Legislature wanted minimum quantity to be an essential element of the crime, it said so. The statutory scheme, moreover, evidences an intention that Penal Law § 220.03 serve as the "basic all-inclusive offense” (Hechtman, op. cit., at 19) covering possession of any controlled substance in any amount. So long as the quantity is sufficient to permit proper identification as a controlled substance, amount is immaterial (People v Smith, 138 Misc 2d 531, supra; see also, People v Rencher, 141 AD2d 676, supra; Hechtman, op. cit., at 19; Rosenblatt, New York’s New Drug Laws and Sentencing Statutes, at 211-213 [1973]).
This reading of Penal Law § 220.03 comports with the legislative intent in enacting article 220. Contrary to defendant’s assertion, the legislative purpose was not limited to punishing possession of drugs in amounts likely to be used (see, People v James, 138 Misc 2d 920, 922-923, supra). The Legislature sought also to deter the traffic in narcotics that has so devastated human life and the fabric of society. As noted in the 1972 Interim Report of the Temporary State Commission to Evaluate the Drug Laws, which the Legislature drew upon in formulating article 220 (see, Hechtman, op. cit., at 7): "Our determination to retain the concept of misdemeanor possessory offenses is based upon our belief that the removal of the potential penal consequences will effect an increase in the incidence of drug abuse * * * We do not choose to run the risk of increasing the incidence of drug abuse by the removal of penal sanctions for the unlawful possession of dangerous drugs,” (1972 NY Legis Doc No. 10, at 58; see also, People v Broadie, 37 NY2d 100, 113, cert denied 423 US 950.) A reading of Penal Law § 220.03 as it is written effects the legislative intention, while imposing a new barrier to criminal liability by implying an additional requirement does not.
Moreover, in contrast to the simple test suggested by the language of the statute itself, implying a "usable amount” requirement would add uncertainty to the law. Neither defen *656 dant nor the courts that have adopted this standard offer any readily applicable definition of usable amount. Usable by whom, how? As one court has observed: "If the test were to be applied to refer to an amount appropriate for defendant’s use it would require testimony involving defendant’s habit, bringing us close to if not within the constitutionally prohibited area regarding defendant’s status as an addict. Robinson v. California, 370 U.S. 660, 82 S Ct 1417, 8 L Ed 2d 758 (1962). If the test were applied so that expert testimony admissible at trial would establish the standard, the result could well differ from courtroom to courtroom and expert to expert, and create the kind of uneven administration of justice we must avoid.” (People v Harrington, 396 Mich 33, 46-47, 238 NW2d 20, 26.)
We therefore conclude that an unusable residue of cocaine is a controlled substance within the purview of Penal Law § 220.03. While courts have expressed understandable concern that criminal actions involving only traces of proscribed substances may represent a misuse of scarce resources in the war against drugs (see, e.g., People v James, 138 Misc 2d 920, 924-925, supra; People v Smith, 138 Misc 2d 531, 536, supra; People v Ifill, 137 Misc 2d 14, 17, supra; People v Mason, 136 Misc 2d 968, 972, supra), the Legislature has plainly entrusted that critical judgment to the prosecutor. The courts can assure that the statutory prerequisites are satisfied as they review accusatory instruments in particular cases, but they cannot winnow out what may seem to be insignificant prosecutions by implying a threshold requirement the Legislature chose not to impose.
Finally, while the focal issue in this appeal as posited by the parties is "residue,” we reject defendant’s additional contention that the misdemeanor complaint fails to state facts showing that his possession of a controlled substance was knowing (see, People v Dumas, 68 NY2d 729). It is settled that knowledge may be proven circumstantially and that, generally, possession suffices to permit the inference that possessors know what they possess, especially when it is on their person (People v Reisman, 29 NY2d 278, 285). Given that the complaint contains facts of an evidentiary character alleging that defendant possessed a visible amount of a controlled substance, it can be inferred for pleading purposes at this juncture that he knew what he possessed (see, People v Dumas, supra). The complaint, therefore, is facially sufficient.
*657 Accordingly, the order of Appellate Term should be reversed and the misdemeanor complaint reinstated.
Chief Judge Wachtler and Judges Simons, Alexander, Titone, Hancock, Jr., and Bellacosa concur.
Order reversed, etc.

 While referring to an "information” in its dismissal order, Criminal Court actually never ruled on the People’s motion to convert the complaint to an information. On this appeal, the People ask only that the misdemeanor complaint be reinstated, and we therefore consider the case in that context.