STATE OF CONNECTICUT *v.* MYLES MCCARTHY
(9440)

DUPONT, C. J., NORCOTT and FOTI, Js.

Argued June 5—decision released September 3, 1991

*Brian M. O'Connell,* for the appellant (defendant).

*Margaret Gaffney Radionovas,* deputy assistant state's attorney, with whom, on the brief, were *John M. Bailey,* state's attorney, and *Edward Wilson,* deputy assistant state's attorney, for the appellee (state).

NORCOTT, J. The defendant appeals from the judgment of conviction, rendered after a jury trial, of possession of cocaine in violation of General Statutes § 21a-279 (a)[1] and tampering with physical evidence in

[1] General Statutes § 21a-279 provides in pertinent part: "PENALTY FOR ILLEGAL POSSESSION. SUBSTITUTION OF MEDICAL TREATMENT FOR CRIMINAL SANCTIONS. (a) Any person who possesses or has under his control any quantity of any narcotic substance, except as authorized in this chapter, for a first offense, may be imprisoned not more than seven years or be fined not more than fifty thousand dollars, or be both fined and imprisoned; and for a second offense, may be imprisoned not more than fifteen years or

violation of General Statutes § 53a-155. He was given a total effective sentence of two years, execution suspended, probation for three years and a fine of $12,500. On appeal, the defendant argues that his conviction should be overturned because the amount of cocaine at issue cannot be classified as a quantity pursuant to § 21a-279 (a). We affirm the trial court's judgment.

The jury could reasonably have found the following facts. While patrolling the parking area at an East Hartford restaurant shortly before 1 a.m. on July 1, 1989, Officer Robert Kornfeld of the East Hartford police department noticed a parked car with its interior light on. Kornfeld approached the car on the driver's side from the rear and noticed three men inside including the defendant in the front passenger seat. Through the car's windows, Kornfeld saw the defendant use two razor blades to chop a white substance into a powder on the dashboard. Believing the defendant was preparing to inhale cocaine, Kornfeld approached the car and identified himself as a police officer. The defendant then held the razor blades, the cocaine and a mirror out of the open passenger window. When Kornfeld told him to put his hand back inside the car, the defendant complied but threw everything into the air inside the vehicle.

Additional officers arrived at the scene and the three men were placed in a police cruiser. Kornfeld searched the car and recovered a piece of white paper with white powder on it, two razor blades, and "bits and pieces" of a white powdery substance from the dashboard, the front passenger seat and the rear seats. A state department of health services laboratory analysis subse-

be fined not more than one hundred thousand dollars, or be both fined and imprisoned; and for any subsequent offense, may be imprisoned not more than twenty-five years or be fined not more than two hundred fifty thousand dollars, or be both fined and imprisoned."

quently showed the substance to be cocaine. No cocaine was detected on the razor blades, and the laboratory did not weigh the cocaine found in the car because it ordinarily does not do so when the amount of a substance is so small. Based on the lab analysis, a warrant for the defendant's arrest was issued on December 9, 1989. At trial, department of health services toxicologist Joel Milzoff testified that, had the cocaine been weighed, it would have amounted to "milligram quantities or less." The amount of the cocaine, he testified, represented "remnants of a consumable amount." Kornfeld testified that the powdery substance could "fit into several zeroes of [a] typewriter."

The defendant claims that § 21a-279 (a) does not permit convictions for possession of illegal narcotics when the amount at issue is a quantity unusable for personal consumption. Our interpretation of § 21a-279 (a) must begin with the proposition that penal statutes are to be strictly construed. *State* v. *Somerville,* 214 Conn. 378, 385, 572 A.2d 944 (1990); *State* v. *Mattioli,* 210 Conn. 573, 579, 556 A.2d 584 (1989). This principle underlies the general rule of statutory interpretation that " 'the intent of the legislature is to be found not in what it meant to say, but in what it did say.' " *State* v. *Roque,* 190 Conn. 143, 150, 460 A.2d 26 (1983), quoting *Gomeau* v. *Forrest,* 176 Conn. 523, 526, 409 A.2d 1006 (1979). In ascertaining that intent, " ' "[i]f the words are clear and unambiguous, 'it is assumed that [they] express the intention of the legislature' . . . and we need inquire no further." ' " *State* v. *Lubus,* 216 Conn. 402, 407, 581 A.2d 1045 (1990), quoting *State* v. *Mattioli,* supra, 576. Further, interpretation of a penal statute "must accord with common sense and commonly approved usage of the language." *State* v. *Edwards,* 201 Conn. 125, 132, 513 A.2d 669 (1986); *State* v. *Roque,* supra, 151. The "words used in a crimi-

nal statute should not be accorded the narrowest technical meaning in disregard of their context and in frustration of the obvious legislative intent." *State* v. *Hufford,* 205 Conn. 386, 392, 533 A.2d 866 (1987). " 'A statute is not to be interpreted to thwart its purpose.' " *State* v. *Roque,* supra, quoting *Mystic Marinelife Aquarium, Inc.* v. *Gill,* 175 Conn. 483, 489, 400 A.2d 726 (1978).

Section § 21a-279 (a) makes criminal the possession of *"any* quantity of *any* narcotic substance." (Emphasis added.) See *State* v. *Connelly,* 194 Conn. 589, 593, 483 A.2d 1085 (1984). Our Supreme Court has repeatedly stated that "[t]he word 'any' has a diversity of meanings and may be used to indicate 'all' or 'every' as well as 'some' or 'one' and its meaning in a given statute depends upon the context and subject matter of the statute." *King* v. *Board of Education,* 203 Conn. 324, 334, 524 A.2d 1131 (1987); *West Hartford Taxpayers Assn., Inc.* v. *Streeter,* 190 Conn. 736, 745, 462 A.2d 379 (1983); *Donohue* v. *Zoning Board of Appeals,* 155 Conn. 550, 556, 235 A.2d 643 (1967); *Muller* v. *Town Plan & Zoning Commission,* 145 Conn. 325, 328, 142 A.2d 524 (1958); see also *New York, N. H. & H. R. Co.* v. *Stevens,* 81 Conn. 16, 21, 69 A. 1052 (1908) ("any" is too comprehensive a word to receive a narrow construction). In *State* v. *Connelly,* supra, our Supreme Court rejected the defendant's claim that the presence of .18 ounces of cocaine could not justify the forfeiture to the state of a car used in furtherance of criminal activity. The court stated that the prohibition in § 21a-279 (a)[2] against "any quantity of any narcotic substance" is "precise language emphasizing that possession of 'any' amount . . . constitutes a crime . . . ." Id., 593.

---

[2] General Statutes § 21a-279 (a) was then codified as § 19-480a. That statute was transferred to its present position in 1983.

Much like the defendant in *Connelly,* the defendant in this case asks this court to find that a conviction for possession of narcotics cannot stand when the amount of illegal narcotics involved is so small as to be unusable for personal consumption. In support of this argument, the defendant relies on decisions from other jurisdictions that held that less than measurable or usable amounts of a narcotic substance cannot sustain a conviction for possession of narcotics. See, e.g., *State v. Moreno,* 92 Ariz. 116, 120, 374 P.2d 872 (1962) (unusable amount insufficient to suppport conviction); *Hawkins* v. *United States,* 482 A.2d 1230, 1233 (D.C. App. 1984) (requiring more than a trace of cocaine); *Payne* v. *United States,* 294 A.2d 501, 503 (D.C. App. 1972) (unquantifiable amount results in failure of proof of evidence of a usable quantity); *Edelin* v. *United States,* 227 A.2d 395, 399 (D.C. App. 1967) (microscopic traces of heroin); *Pelham* v. *State,* 164 Tex. Crim. 226, 228–29, 298 S.W.2d 171 (1957) (unusable amount of marihuana not within meaning of possession statute); *Greer* v. *Texas,* 163 Tex. Crim. 377, 378, 292 S.W.2d 122 (1956) (trace amount of heroin on cotton in bottlecap).

We note that, notwithstanding the above cases, it is the majority view that *any* amount of a proscribed substance is sufficient to sustain a conviction for possession. See *People* v. *Harrington,* 396 Mich. 33, 42–45, 238 N.W.2d 20 (1976); *People* v. *Mizell,* 72 N.Y.2d 651, 654, 532 N.E.2d 1249, 536 N.Y.S.2d 21 (1988); note, "Criminal Liability for Possession of Nonusable Amounts of Controlled Substances," 77 Colum. L. Rev. 596, 605–12 (1977). Despite this majority view, the defendant contends that our legislature intended to punish only the possession of usable amounts of illegal narcotics and advocates that this court adopt the minority view that possession of a mere trace or an

unusable amount cannot constitute a crime. Numerous courts that have considered this issue have declined to impose minimum amount requirements. See, e.g., *People* v. *Harrington,* supra; *State* v. *Humphreys,* 54 N.J. 406, 411, 255 A.2d 273 (1969); *People* v. *Mizell,* supra; *State* v. *Winters,* 16 Utah 2d 139, 143, 396 P.2d 872 (1964). Even when the smallest amounts have been at issue, courts have nevertheless upheld convictions. See, e.g., *Manuel* v. *State,* 782 S.W.2d 335, 336 (Tex. Crim. App. 1989) (amount of cocaine equivalent to the size of four to six pinheads); *Chavez* v. *State,* 768 S.W.2d 366, 367–68 (Tex. Crim. App. 1989) (1.5 milligrams); *Miller* v. *State,* 723 S.W.2d 789, 790 (Tex. Crim. App. 1987) (.008 milligrams).

Despite the defendant's urgings, we also decline to require any minimum amount or usability requirement before a conviction may be had pursuant to § 21a-279 (a). It is not the province of a court to read into a criminal statute a requirement not contained therein. *State* v. *Duhan,* 194 Conn. 347, 358, 481 A.2d 48 (1984). " '[C]ourts should not imply exceptions to a statute which the legislature did not prescribe by word or implication.' " *State* v. *Snook,* 210 Conn. 244, 267, 555 A.2d 390 (1989), quoting *Caulkins* v. *Petrillo,* 200 Conn. 713, 719, 513 A.2d 43 (1986). Section § 21a-279 (a) neither contains nor implies any minimum amount or usability exception to its prohibition against the possession of illegal narcotics. Indeed, the defendant in his brief concedes that when the legislature enacted § 21a-279 (a), it intended to prevent drug use and did not provide for any amount or usability requirement. When a statute provides for punishment in such unequivocal language and provides for no exceptions, " 'it must be assumed that the legislature deemed that such enactment was necessary effectively to curb violation of the law, and we cannot impute to it an intent to make the statute less drastic and effective by adopting a strained con-

struction of the language used, and reading into it an exception which does not there appear. . . .' " *State* v. *One 1977 Buick Automobile,* 196 Conn. 471, 485, 493 A.2d 874 (1985), quoting *Alcorn* v. *Alexandrovicz,* 112 Conn. 618, 623–24, 153 A. 786 (1931).

Moreover, our statutes proscribing illegal substances "reflect convincingly a strong legislative policy directed toward the *complete* suppression of narcotics such as heroin and cocaine." (Emphasis added.) *State* v. *Rawls,* 198 Conn. 111, 123, 502 A.2d 374 (1985) *(Dannehy, J., dissenting in part).* For this court to impose a minimum amount or usability requirement would so constrict and narrow § 21a-279 (a) as to frustrate the legislature's intention. Further, such a requirement would add uncertainty to the law. Courts that have adopted a minimum amount or usability standard have failed to offer any readily applicable definition of a usable amount. *People* v. *Mizell,* supra, 656. The unwieldy nature of such a test counsels against any usability or minimum amount requirement. " 'If the test were applied so that expert testimony admissible at trial would establish the standard, the result could well differ from courtroom to courtroom and expert to expert, and create the kind of uneven administration of justice we must avoid.' " Id., quoting *People* v. *Harrington,* supra, 46–47.

Although we are mindful of the defendant's concerns about prosecutions based on microscopic amounts of illegal narcotics, the legislature has opted to rely in such cases on the judgment of prosecutors. Courts provide a check on the state's accusatory powers, but we will not substitute our judgment for that of a prosecutor with respect to which cases should be tried and which are insignificant through the veil of a threshold amount or usability requirement not contained in § 21a-279 (a).

Because we affirm the defendant's conviction for possession of narcotics, his challenges to the instructions

to the jury on usability and to his conviction of tampering with physical evidence, based on the same arguments discussed above, must fail.

The judgment of the trial court is affirmed.

In this opinion the other judges concurred.